UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARK COLIN JENNINGS, II,

        Plaintiff,                        Case No. 1:17-cv-564

v.                                          Honorable Janet T. Neff

DUNCAN MACLAREN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Mark Colin Jennings, II, is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Michigan. The events about which he complains, however, began while he was incarcerated at the Kinross Correctional Facility (KCF) in Kincheloe, Michigan, and continued when he was transferred to ECF in February of 2016. Plaintiff sues KCF Warden Duncan MacLaren; ECF Warden Tom Mackie; MDOC Deputy Director Kenneth McKee; KCF nurses Julie Hessenlink and Shannon Martin; and KCF Corrections Officer E. MacDonald.[1]

Plaintiff alleges that from February 12, 2015, to March 12, 2015, he was restricted to non-contact visits by Defendant MacLaren. Beginning September 3, 2015 to date, Defendants have denied Plaintiff any visits. Plaintiff states that these restrictions have been imposed for no legitimate penological reason. Plaintiff's further allegations, however, shed some light on why he has been denied normal visitation privileges.

Plaintiff acknowledges that he has been denied visits because of two substance abuse misconducts. MDOC policy provides in pertinent part:

> HH.   The Warden shall limit a prisoner of any security level to non-contact visits for a period of 30 days if the prisoner is found guilty of a Class I misconduct violation of substance abuse for behavior that occurred on or after August 27, 2003 . . . .
>
> BBB.  [T]he Director may restrict all of a prisoner's visits if the prisoner is convicted or found guilty of . . . [t]wo or more violations of the Class I misconduct charge of substance abuse for behavior that occurred on or after January 1, 2007, which do not arise from the same incident. This includes failure to submit to substance abuse testing.

---

[1] Plaintiff also sues Jane or John Doe and Party Responsible Doe. He does not, however, attribute any conduct or misconduct to these unnamed parties. He simply lists them in that section of the complaint that identifies the Defendants. (Compl., ECF No. 1, PageID.3.)

MDOC Policy Directive 05.03.140, Prisoner Visiting (eff. 5/22/2017).[2] It appears that Plaintiff's restriction to non-contact visits followed his first substance abuse misconduct and the total restriction followed his second substance abuse misconduct.

Plaintiff's contention that his visitation privileges have been restricted without reason follows from his further allegations that the substance abuse misconducts were based on false, hearsay testimony and, thus, violated his right to due process as well as his right to confrontation. Plaintiff claims that Defendants Hessenlink and Martin, with the assistance of Defendant McDonald, wrote the substance abuse misconduct reports in retaliation for Plaintiff's filing of a grievance against Defendants Hessenlink and Martin.

Plaintiff asks the Court to declare that Plaintiff's constitutional rights have been violated, enter preliminary and permanent injunctive relief ordering Defendants to restore Plaintiff's right to receive visitors; and grant costs, compensatory damages, and punitive damages.

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

---

[2] The current policy is two amendments removed from the policy in place when Plaintiff was first restricted to non-contact visits. The relevant above-quoted provisions, however, have remained the same. *See* MDOC Policy Directive 05.03.140, Prisoner Visiting (eff. 10/1/2007) ¶¶ FF, ZZ; MDOC Policy Directive 05.03.140, Prisoner Visiting (eff. 10/27/2015) ¶¶ GG, AAA.

do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff claims that all of the Defendants have violated his First Amendment rights of association by restricting visitation; that Defendants Hessenlink, Martin, and MacDonald have violated Plaintiff's First Amendment rights by retaliating against him for filing a grievance; that Defendants MacLaren, McKee, and Mackie, by restricting visitation, have violated Plaintiff's right

to due process under the Fourteenth Amendment; Plaintiff contends that his right to due process under the Fourteenth Amendment and his right to confront witnesses under the Sixth Amendment were violated when he was found guilty of substance abuse misconducts based on hearsay evidence; and Plaintiff claims that depriving him of all visitors is cruel and unusual punishment in violation of the Eighth Amendment.

        II.    <u>Restriction of visitation as a violation of the First Amendment, Eighth Amendment, or Fourteenth Amendment</u>

The United States Supreme Court was presented with the question whether the MDOC visitation restrictions violated the First, Eighth, or Fourteenth Amendment in *Overton v. Bazzetta*, 539 U.S. 126, 128 (2003). The *Overton* Court specifically rejected the arguments Plaintiff makes here. The Court held that the restriction on visitation for inmates with two substance-abuse violations did not violate the Eighth Amendment because it did not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety[; n]or does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur." *Id.* at 137. The *Overton* court also determined that the two-year visitation restrictions withstood constitutional scrutiny because they "[bore] a rational relation to legitimate penological interests . . . the legitimate goal of deterring the use of drugs and alcohol within the prisons." *Id.* at 132, 134.[3] The *Overton* Court concluded that the restriction limiting an inmate to non-contact visits likewise passed constitutional muster. Thus, Plaintiff has failed to state a claim that the visitation restrictions imposed upon him are unconstitutional.

        III.    <u>First Amendment retaliation</u>

---

[3]The *Overton* court recognized that the restriction was severe and recognized it might reach a different conclusion if a particular application operated "as a de facto permanent ban on all visitation for certain inmates . . .." *Id.* at 134. Plaintiff, however, remains in the initial two-year period of his visitation restriction.

Plaintiff turns from challenging the visitation restrictions to challenging the substance abuse misconduct proceedings that led to the restrictions. Plaintiff claims Defendants Hessenlink, Martin, and MacDonald filed the substance abuse misconduct reports in retaliation for Plaintiff's filing of a grievance against Hessenlink and Martin for the denial of medical care. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Even if one accepts that the misconduct reports constitute sufficiently adverse actions, however, Plaintiff has still failed to state a claim because he alleges no facts to show that the adverse actions were motivated by the protected conduct.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of

retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. He merely concludes that because he filed a grievance, presumably before Defendants' actions, their actions must have been motivated by his grievance. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be

in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff merely alleges temporal proximity between Defendants' conduct and his grievance. Such allegations are insufficient to state a retaliation claim.

> IV.    The substance abuse misconduct proceedings

Plaintiff provides little detail about the substance abuse misconduct proceedings other than stating he was found guilty based on hearsay evidence and, thus, deprived of his right of confrontation and due process. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every

>conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[4] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

---

[4] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). For purposes of this analysis, the Court will consider the visitation restrictions to be a significant and atypical deprivation. Even if some process is due, however, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The *Wolff* Court concluded that the rights to confrontation and cross-examination, the very rights Plaintiff calls into question when he complains about hearsay testimony, are not constitutionally required. *Id.* at 567-569. Accordingly, Plaintiff's complaint that the hearing officer found Plaintiff guilty based on hearsay evidence fails to state a claim for violation of Plaintiff's constitutional rights.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g). Moreover, it is Plaintiff's third such dismissal. *See Jennings v. Hall*, No. 5:16-cv-11848, 2016 WL 4089222 at *1 (E.D. Mich. August 2, 2016) ("The Court dismisses Plaintiff's complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted."); *Jennings v. Reyes*, No. 2:16-cv-11864, 2016 WL 3072252 at *1 (E.D. Mich. Jun. 1, 2016) ("[T]he Court concludes that Plaintiff has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1983. Accordingly, the Court DISMISSES the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B).").

A Judgment consistent with this Opinion will be entered.


Dated: July 27, 2017                        /s/ Janet T. Neff
                                            Janet T. Neff
                                            United States District Court Judge